IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| POST-CONFIRMATION COMMITTEE FOR SMALL LOANS, INC., : : : Plaintiff, : : v. : CASE NO.: 1:13-CV-195 (WLS) : W. DEREK MARTIN, as Executor : of the Estate of Vance R. Martin, *et al.* : : Defendants. : : | |

## ORDER

Presently before the Court is a Motion to Dismiss filed by *pro se* Defendant Grace Elizabeth Martin Johnston, Individually, and as Trustee of the Vance R. Martin GST Exempt Family Trust F/B/O Grace Elizabeth Martin Johnston ("Johnston"). (Doc. 70.) Therein, she seeks dismissal of Counts III, IV, X, XIX, XX, XXI, and XXIV. (*Id.* at 3-4.) Johnston also argues that the Court does not have personal jurisdiction over her. (*Id.* at 4.)

## FACTUAL BACKGROUND[1]

Johnston, a citizen of Ohio, is the daughter of Vance "Rudy" Martin ("Rudy Martin") and the sister of Derek Martin and Jeff Martin. (Doc. 1 at ¶¶ 32 & 46.) She was, at all times relevant to this suit, an equity owner of Small Loans, Inc., The Money Tree, Inc., The Money Tree of Georgia, Inc., The Money Tree of Florida, Inc., and The Money Tree of Louisiana, Inc. (collectively, "the Debtors"), and The Interstate Motor Club, Inc., as well as the owner and/or beneficiary of various trusts and entities established by members of the Martin family, including the Johnston trust. (*Id.* at ¶¶ 17 & 32.)

In 1987, Vance "Rudy" Martin ("Rudy Martin") founded The Money Tree of Georgia in Bainbridge, Georgia. (*Id.* at ¶ 46.) Over time, Rudy Martin organized various

---

[1] For the purposes of the motion to dismiss, the Court must accept all well-pleaded allegations in Plaintiff's complaint as true. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (citing *Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012)).

1

corporate affiliates of The Money Tree of Georgia in Alabama, Florida, and Louisiana. (*Id.*) The Money Tree was organized as the parent company of Small Loans, The Money Tree of Georgia, The Money Tree of Florida, and The Money Tree of Louisiana. (*Id.* at ¶¶ 17 & 46.) The primary business of those corporate entities was providing small loans to individuals with limited access to credit. (*Id.* at ¶ 46.)

By 2000, the Debtors were insolvent and continued in business only by raising additional funds by debt offerings to Investors, who were primarily Georgia retirees. (*Id.* at ¶¶ 3 & 46.) Best Buy Autos of Bainbridge, Inc. ("Best Buy"), a subsidiary of The Money Tree of Georgia, and therefore an indirect subsidiary of The Money Tree, sold and financed automobiles. (*Id.* at ¶¶ 36 & 47.) From 2009 until the Debtors filed for bankruptcy, Best Buy owed The Money Tree of Georgia at least $16.97 million. (*Id.* at ¶ 47.) The Money Tree and The Money Tree of Georgia raised capital by selling various debt instruments to people residing in Georgia. (*Id.* at ¶ 48.) The latter sold various debt instruments to Georgia investors from 1999 until 2005. (*Id.* at ¶ 49.) The Money Tree of Georgia raised approximately $73 million in capital during that time period. (*Id.*) In 2005, The Money Tree registered with the United States Securities and Exchange Commission to sell debt instruments to members of the public. (*Id.* at ¶ 50.) From 2005 until 2011, The Money Tree raised approximately $71 million in capital through debt offerings. (*Id.*)

The Debtors filed for bankruptcy and their Chapter 11 Plan was confirmed on or about May 6, 2013. (*Id.* at ¶ 51.) Plaintiff was appointed to pursue any claims and causes of action held by the Debtors' estates because those estates do not have sufficient assets to satisfy at least $84 million in claims of the Debtors' creditors. (*Id.*) The Debtors' loss of assets and, derivatively, the creditors' loss of assets, would have been lessened or avoided but for the actions of the Defendants in this suit. (*Id.* at ¶ 52.)

According to the Debtors' own records, the Debtors were insolvent by 2001. (*Id.* at ¶ 54.) Prior to his death, Rudy Martin established several trusts, including the Johnston Trust. (*Id.* at ¶ 58.) The trusts were established with knowledge of the potential claims against Rudy Martin and his heirs as a result of the misconduct associated with the various Money Tree entities. (*Id.*)

The Motor Club was a business organized by Rudy Martin in 1990 to market various ancillary services to Debtors' consumer loan customers. (*Id.* at ¶ 81.) The equity interests in that company were owned by Rudy Martin, Derek and Jeff Martin, and Johnston. (*Id.*) The Motor Club was established separately from Debtors so the Martins could usurp the Debtors' corporate opportunities. (*Id.* at ¶ 82.) During the four years prior to the Debtors' bankruptcy petition, the Debtors transferred at least $1,885,800.55 to The Motor Club. (*Id.* at ¶ 84.) Johnston received at least $120,626.50 from The Motor Club. (*Id.* at ¶¶ 84-86.)

## ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. When reviewing a Rule 12(b)(6) motion, the Court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.' " *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.' " *Id.* at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)).

### A. Conspiracy to Breach Fiduciary Duties and Aiding and Abetting Breach of Fiduciary Duties

Counts III and IV allege that Johnston, in concert with various individuals and entities, including Debtors' directors and officers, intentionally conspired to breach fiduciary duties, and aided and abetted others in the breach of fiduciary duties, owed by Debtors' directors and officers to Debtors and their creditors. (Doc. 1 at ¶¶ 121-126.) Johnston argues that she cannot be held liable in Counts III and IV because she was not an officer,

3

director, or majority shareholder of The Money Tree and therefore did not owe a fiduciary duty to any investor or creditor. (Doc. 70 at 3.)

The Court finds that Counts III and IV properly state causes of action against Johnston under Georgia law for conspiracy to breach fiduciary duties and aiding and abetting breach of fiduciary duties. To be liable for those torts, Johnston need not owe any person fiduciary duties. *See* Ga. Code Ann. § 51-12-30. Instead, the complaint is sufficient as to Counts III and IV if it alleges that Johnston acted as a joint tortfeasor with other individuals who owed fiduciary duties. *Insight Technology, Inc. v. FreightCheck, LLC*, 633 S.E.2d 373, 377-78 (Ga. Ct. App. 2006). Here, the complaint alleges that Johnston acted with others in a conspiracy to intentionally breach fiduciary duties owed by co-conspirators. (Doc. 1 at ¶¶ 121-126.) For that reason, the Court finds that Counts III and IV properly assert claims against Johnston under Georgia law.

### B. Fraudulent Transfer

Count X alleges that Johnston benefited from a fraudulent transfer that originated with The Money Tree when that company was insolvent. (*Id.* at ¶¶ 157-163.) Johnston states that she "never transferred any funds from any of the entities in question to anyone." (Doc. 70 at 3.) Johnston also asserts that "the Money Tree benefited much more from The Interstate Motor Club distributions than did the Defendant" and "The Money Tree – not the Defendant – was contractually responsible for management and compensated handsomely for the same." (*Id.*)

The Court finds that Count X properly states a cause of action against Johnston under Georgia law for fraudulent transfer. "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]" Ga. Code Ann. § 18-2-74(a)(1). For the purpose of the motion to dismiss, Johnston's actual intent to defraud is evidenced by the insider knowledge she allegedly had as an equity owner of The Motor Club and by her ties to The Money Tree. Allegedly, at the time of the transfer, The Money Tree was insolvent and Johnston had notice of such, but Johnston nonetheless personally and intentionally benefited from the fraudulent transfer. The Court

4

cannot consider Johnston's statement of facts at this stage because, as noted above, the Court must accept all allegations in the complaint as true when considering a motion to dismiss. As such, the Court finds that Plaintiff properly stated a cause of action against Johnston for fraudulent transfer under Georgia law.

### C. Avoidance and Recovery of Preferential Transfers and Recovery of Avoided Transfers

In Count XIV, the Plaintiff seeks to avoid certain preferential transfers of funds from The Money Tree to The Interstate Motor Club, and, ultimately, to Johnston. In Count XX, the Plaintiff seeks to recover transfers to Johnston that were transferred from The Money Tree while that company was insolvent. The Committee has the authority to "avoid any transfer of an interest of the debtor in property . . . made while the debtor was insolvent." 11 U.S.C. § 547(b)(3). "[T]o the extent a transfer is avoided . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(2). According to the complaint, Johnston is an immediate transferee of the initial transferee, The Interstate Motor Club. Contrary to Johnston's contention, the debt need not be owed to the United States for transfers to be avoidable or recoverable. (*See* Doc. 70 at 3.) For those reasons, the Court finds that Counts XIV and XX properly state claims against Johnston for avoidance and recovery of preferential transfers.

### D. Receipt and/or Payment of Illegal Dividends

Count XXI seeks to assert a cause of action against Johnston for receiving payments that constitute illegal dividends under Ga. Code Ann. § 14-2-640. Johnston states that Plaintiff cannot recover from her because she is not a director. Johnston further asserts that she is entitled to retain any payments, even if those payments constitute illegal dividends, because she received the payment without knowing "of its invalidity." (Doc. 70 at 3.)

Ga. Code Ann. § 14-2-640(c) prohibits distributions to shareholders where, after making the distribution, the corporation would be rendered actually insolvent or "balance sheet insolvent." Here, Plaintiff alleges that Johnston received distributions from the corporate Debtors in violation of § 14-2-640(c) with knowledge that the Debtors were

balance sheet insolvent.  (*See* Doc. 1 at ¶ 217.)  That allegation is sufficient to state a claim against Johnston under § 14-2-640(c).  If proven to be true, Johnston may be liable for the amount of the improper distribution.  *See* Ga. Code Ann. § 14-2-622; *In re W.T. Mayfield Sons Trucking Co., Inc.*, 225 B.R. 818, 818 (Bankr. N.D. Ga. 1998).

### E. Punitive Damages

Johnston argues that Plaintiff's claim for punitive damages is only valid as to the counts discussed above and, because those claims are allegedly "invalid," the punitive damages claim in Count XXIV should be dismissed.  (Doc. 70 at 3-4.)  For the reasons discussed above, no claims against Johnston will be dismissed.  Accordingly, the punitive damages claim against Johnston shall remain in this suit.

### F. Personal Jurisdiction

Lastly, Johnston claims that the Court does not have personal jurisdiction over her because she "is a citizen of Ohio who has no fiduciary duty to anyone in Georgia or in any other state, has no directing or managing authority of any of the entities in question, and has authorized no disbursements."  (Doc. 70 at 4.)  Because many of the claims against Johnston arise under Georgia state law, the Court finds it appropriate to conduct the personal jurisdiction analysis under the framework established by *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249 (11th Cir. 2010).  "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *Id.* at 1257 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).  Because Johnston did not file "affidavits in support of [her] position," the Plaintiff need not prove "by affidavit the basis upon which jurisdiction may be obtained" and may instead rely solely upon the complaint.  *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citations omitted).

The Court has personal jurisdiction over Johnston if the exercise of such jurisdiction is appropriate under Georgia's long arm statute and does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Id.* at 1257-58.  Johnston falls under Georgia's long arm statute because, according to Plaintiff's complaint, Johnston

committed tortious acts that caused injuries within Georgia. *See* Ga. Code Ann. § 9-10-91(3).

As to the Constitutional aspect of the inquiry, "the Due Process Clause requires 'that [Johnston's] conduct and connection with the forum State be such that [s]he should reasonably anticipate being haled into court there.' " *Diamond Crystal*, 593 F.3d at 1267 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). In this case, Johnston should have anticipated being haled into a court in Georgia. According to the complaint, Johnston "was, at all times relevant to [the] Complaint, an equity owner of the Debtors (through the Johnston Trust) and the Interstate Motor Club, Inc., as well as the owner and/or beneficiary of various trusts and entities established by members of the Martin family, including the Johnston Trust." (Doc. 1 at ¶ 32.) Debtors, the Johnston Trust, and The Interstate Motor Club are entities established under the laws of Georgia. Importantly, Johnston allegedly received illegal distributions from Debtors by way of The Interstate Motor Club, which was a Georgia corporation. Based on the activities in and ties to Georgia discussed above, the Court finds that Johnston had reasonable notice of the likelihood that she would be required to litigate a lawsuit against her in Georgia.

## CONCLUSION

For the reasons stated above, the Court finds that it has personal jurisdiction over Johnston and Counts III, IV, X, XIX, XX, XXI, and XXIV against her properly state claims. As such, Johnston's Motion to Dismiss (Doc. 70) is **DENIED.**

**SO ORDERED**, this  14th  day of October 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**

7