IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| POST-CONFIRMATION COMMITTEE FOR SMALL LOANS, INC., | : : : | |
| Plaintiff, | : : | |
| v. | : : | CASE NO.: 1:13-CV-195 (WLS) |
| W. DEREK MARTIN, as Executor of the Estate of Vance R. Martin, *et al.* | : : : : | |
| Defendants. | : : | |

## ORDER

Pending before the Court are Defendant James Patrick Johnston's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 124), the Plaintiff's Motion for Default Judgment (Doc. 135), and Motions to Vacate Entries of Default Related to Defendants H&B Enterprises, Inc., and Bradley D. Bellville. (Docs. 137 & 138.) For the reasons that follow Defendant Johnston's Motion to Dismiss (Doc. 124) is **DENIED**, the Plaintiff's Motion for Default Judgment (Doc. 135) is **DENIED**, and the Motions to Vacate Entries of Default (Docs. 137 & 138) are **GRANTED**.

### I.     Johnston's Motion to Dismiss

#### A.     Lack of Personal Jurisdiction

On November 7, 2014, the Plaintiff amended its complaint to assert a claim against Defendant James Patrick Johnston as a "mediate or immediate transferee of some or all . . . amounts recoverable . . . under 11 U.S.C. § 550." (*See* Doc. 113 at 34.) Johnston was served with the amended complaint in Ohio on November 12, 2014. (Doc. 124 at 1.) Johnston argues that the Court lacks personal jurisdiction over him. (*See* Doc. 124.)

"When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *Republic of Panama v. BCCI Holdings (Luxembourg)*

1

*S.A.*, 119 F.3d 935, 942 (11th Cir. 1997). "The Bankruptcy Rules are established under a federal statute and authorize nationwide service of process." *Redhawk Global, LLC V. World Projects Int'l*, 495 B.R. 368, 373 (Bankr. S.D. Ohio 2013); *see also* 28 U.S.C. § 2075 & Fed. R. Bankr. P. 7004(d). "[T]he applicable forum for minimum contacts purposes is the United States in cases where, as here, the court's personal jurisdiction is invoked based on a federal statute authorizing nationwide . . . service of process." *S.E.C. v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir. 1997).

Notwithstanding the recognition of the law cited above, Johnston states that "requiring [him] to defend the vague and unsupported allegation made against him in the Amended Complaint in Georgia would pose a severe inconvenience rising to the level of constitutional concern." (Doc. 134 at 2-3.) Johnston provides no legal citation as to why the inconvenience he will allegedly suffer from litigating in this forum "ris[es] to the level of constitutional concern." (*See generally* Doc. 134.) Because the United States as a whole is the applicable forum for minimum contacts purposes and Johnston has admitted that he is a resident of Ohio, the Court finds that it has personal jurisdiction over him. (*See* Doc. 124-1 at 1.)

### B.     Failure to State a Claim

Johnston asserts that the Plaintiff's amended complaint fails to state a claim. (*See* Doc. 124 at 8.) Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Id.* (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is . . . 'exceedingly low.'" *Acosta v. Watts*, 281 F. App'x

2

906, 908 (11th Cir. 2008) (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)).

While the Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff," *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), in evaluating the sufficiency of a Plaintiff's pleadings, the Court must "make reasonable inferences in Plaintiff's favor, 'but we are not required to draw Plaintiff's inference.' " *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)). The Supreme Court instructs that while on a Motion to Dismiss "a court must accept as true all of the allegations contained in a Complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint.) In the post-*Twombly* era, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To analyze Johnston's motion to dismiss, the Court must rely on the following facts as asserted by the amended complaint. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (citing *Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012)). Grace Elizabeth Martin Johnston, a citizen of Ohio, is the daughter of Vance "Rudy" Martin ("Rudy Martin"), the sister of Derek Martin and Jeff Martin, and the wife of James Patrick Johnston. (Doc. 113 at ¶¶ 31 & 32.) She was, at all times relevant to this suit, an equity owner of Small Loans, Inc., The Money Tree, Inc., The Money Tree of Georgia, Inc., The Money Tree of Florida, Inc., and The Money Tree of Louisiana, Inc. (collectively, "the Debtors"), and The Interstate Motor Club, Inc., as well as the owner and/or beneficiary of various trusts and entities established by members of the Martin family, including the Johnston trust. (*Id.* at ¶ 31.)

In 1987, Rudy Martin founded The Money Tree of Georgia in Bainbridge, Georgia. (*Id.* at ¶ 44.) Over time, Rudy Martin organized various corporate affiliates of The Money Tree of Georgia in Alabama, Florida, and Louisiana. (*Id.*) The Money Tree was organized as

3

the parent company of Small Loans, The Money Tree of Georgia, The Money Tree of Florida, and The Money Tree of Louisiana. (*Id.* at ¶¶ 17 & 44.) The primary business of those corporate entities was providing small loans to individuals with limited access to credit. (*Id.* at ¶ 44.)

By 2000, the Debtors were insolvent and continued in business only by raising additional funds by debt offerings to Investors, who were primarily Georgia retirees. (*Id.* at ¶¶ 3 & 44.) Best Buy Autos of Bainbridge, Inc. ("Best Buy"), a subsidiary of The Money Tree of Georgia, and therefore an indirect subsidiary of The Money Tree, sold and financed automobiles. (*Id.* at ¶¶ 34 & 45.) From 2009 until the Debtors filed for bankruptcy, Best Buy owed The Money Tree of Georgia at least $16.97 million. (*Id.* at ¶ 45.) The Money Tree and The Money Tree of Georgia raised capital by selling various debt instruments to people residing in Georgia. (*Id.* at ¶ 46.) The latter sold various debt instruments to Georgia investors from 1999 until 2005. (*Id.* at ¶ 47.) The Money Tree of Georgia raised approximately $73 million in capital during that time period. (*Id.*) In 2005, The Money Tree registered with the United States Securities and Exchange Commission to sell debt instruments to members of the public. (*Id.* at ¶ 48.) From 2005 until 2011, The Money Tree raised approximately $71 million in capital through debt offerings. (*Id.*)

The Debtors filed for bankruptcy and their Chapter 11 Plan was confirmed on or about May 6, 2013. (*Id.* at ¶ 49.) The Plaintiff was appointed to pursue any claims and causes of action held by the Debtors' estates because those estates do not have sufficient assets to satisfy at least $84 million in claims of the Debtors' creditors. (*Id.*) The Debtors' loss of assets and, derivatively, the creditors' loss of assets, would have been lessened or avoided but for the actions of the Defendants in this suit. (*Id.* at ¶ 50.)

According to the Debtors' records, the Debtors were insolvent by 2001. (*Id.* at ¶ 53.) Prior to his death, Rudy Martin established several trusts, including the Johnston Trust. (*Id.* at ¶ 56.) The trusts were established with knowledge of the potential claims against Rudy Martin and his heirs as a result of the misconduct associated with the various Money Tree entities. (*Id.*) Johnston and his wife, who is also named in the above-captioned suit, were mediate or immediate transferees of some of the allegedly fraudulent transfers the Plaintiff seeks to set aside under 11 U.S.C. § 550(a). (*Id.* at ¶ 221.)

Based on the above, the Court finds that the Plaintiff's amended complaint sufficiently states a claim against Johnston. The Committee has the authority to "avoid any transfer of an interest of the debtor in property . . . made while the debtor was insolvent." 11 U.S.C. § 547(b)(3). "[T]o the extent a transfer is avoided . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(2). The amended complaint alleges that Johnston was an immediate or mediate transferee of the initial transferee. In other words, the complaint alleges that Johnston is in possession of funds or property that are causally connected to avoidable transfers under 11 U.S.C. § 550. Accordingly, the Court finds that the amended complaint sufficiently states a claim against Johnston.

## II. Motions to Vacate Entry of Default

On November 4, 2014, after the Plaintiff's initial complaint was answered by all Parties except Defendant Best Buy, Jeffrey A. Daxe and Carey E. Olson of Moore, Ingram, Johnson & Steele, LLP, withdrew as counsel from the representation of Defendants Bradley D. Bellville and H&B Enterprises, Inc. ("H&B"). (*See* Docs. 104 & 108.) At that time, those Defendants were ordered to obtain counsel within 21 days. (Doc. 109.) The Plaintiff amended its complaint on November 7, 2014. (Doc. 113.) Because Defendants Best Buy, Bellville, and H&B did not timely answer the amended complaint, the Plaintiff's motion for entries of default was granted by the Clerk's Office of this Court on December 18, 2014. (*See* Doc. 132.) On January 12, 2015, more than two months after Defendants Bellville and H&B were ordered to obtain counsel, counsel for the referenced Defendants filed notices of appearance and motions to set aside the entries of default. (*See* Docs. 136-138.) To date, Best Buy has not appeared in this case. (*See generally* Docket.)

Bellville is the owner of and registered agent for H&B Enterprises. (Doc. 137-1 at 2.) In his affidavit in support of the motions to set aside the entries of default, Bellville states that he did not receive notice of the motion for entry of default until December 17, 2014, and has "found no evidence that this document was served [ ]on [him] on or around November 7, 2014, as indicated by the Certificate of Service." (Doc. 137-1 at 2-3.) Bellville and

5

H&B assert that the entries of default should be set aside because, at most, the failure to answer the amended complaint was a negligent act by a non-attorney, *pro se* defendant. (*See* Docs. 137 & 138.) Also, those Defendants state that the requested relief will not prejudice the Plaintiff, and that they have meritorious defenses to the claims against them. (*See id.*)

The Plaintiff argues that the entry of default should not be set aside because Bellville, even after learning of the entry of default against him on December 17, 2014, did not seek an extension or file a motion to set aside until January 12, 2015. (*See* Docs. 141 & 142.) The Plaintiff asserts that such fact, when considered in conjunction with H&B's failure to obtain counsel within 21 days as ordered by the Court, supports the denial of the Defendants' motions to set aside the entries of default. (*See* Doc. 141 at 4-5.) Further, the Plaintiff asserts that it will be prejudiced if the Court sets aside the entry of default because it has incurred additional expense due to the referenced Defendants' failure to timely answer the complaint and the Defendants continue to "spen[d] additional funds of [a] diminishing asset pool in delaying this litigation." (*Id.* at 5.)

Under Rule 55(c) of the Federal Rules of Civil Procedure, the Court may set aside an entry of default for "good cause shown." While that standard is "mutable" and "not susceptible to a precise formula," courts generally consider several established factors. *See Compania Interamerica Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (citing *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989)). Courts generally consider (1) whether the default was culpable or willful, (2) whether setting default aside would prejudice the opposing party, (3) whether the defaulting party has a meritorious defense, (4) whether public interest is implicated, (5) whether the defaulting party suffered a significant financial loss, and (6) whether the defaulting party acted promptly to correct the default. *Id.* (citations omitted). "[I]f a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Id.* at 951-52 (citing *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194-95 (6th Cir. 1986)).

Based on the above standards and referenced factors, the Court finds that the entries of default as to Defendants Bellville and H&B should be set aside. The Eleventh Circuit has

a "strong policy of determining cases on their merits" when reasonably possible. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014) (citing *Fla. Physician's Ins. Co., Inc.. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993)). While H&B did not timely obtain counsel, the record contains no indication that H&B did so in willful contempt of this Court's order. Counsel now represents H&B, and Defendants Bellville and H&B timely replied to the Plaintiff's response as to the motions to set aside entries of default. (*See* Docs. 143 & 144.) Therefore, the entry of default and default judgment would be based on the Defendants' failure to timely obtain counsel and failure to timely answer the *amended* complaint. The Defendants timely answered the initial complaint and have demonstrated their intent to litigate this suit. Further, if held liable in this matter on the Plaintiff's motion for default judgment, Bellville would potentially have an $84 million judgment against him, and H&B would potentially have a judgment against it totaling over $350,000. (*See* Doc. 135 at 3.) Such a result based on two untimely acts by the Defendants would be overly harsh, especially in light of this Circuit's preference to determine cases on their merits. For those reasons, the motions to set aside the entries of default (Docs. 137 & 138) are **GRANTED.** As such, the motion for default judgment as to Defendants Bellville and H&B (Doc. 135) is **DENIED.**

As to the motion for default judgment against Best Buy, the Court finds that such motion should be denied at this time. On a motion for default judgment, the defaulting party admits the movant's well-pleaded factual allegations. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citing *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[1] Those factual allegations must provide a sufficient basis for imposing liability on the defaulting party. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Because the Plaintiff must demonstrate that the facts alleged in the complaint support the imposition of liability on the referenced Defendant, the Plaintiff's Motion should have identified the allegations that support such liability. *See* M.D. Ga. L.R. 7.1. Because Plaintiff's instant Motion does not comply with the Local Rules, that Motion (Doc. 135) is **DENIED WITHOUT PREJUDICE.** The Plaintiff is **ORDERED** to refile its Motion for Default Judgment, consistent with the Local Rules of

---

[1] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

7

this Court, against Best Buy within thirty (30) days of the Court's order granting summary judgment in favor of or against all other Defendants, or a trial in this matter. A Motion for Default Judgment filed against Best Buy before the disposition of claims against all other Defendants or a trial in this matter, whichever occurs first, may be deemed premature.

## CONCLUSION

Based on the above, Defendant James Patrick Johnston's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 124) is **DENIED**, the Plaintiff's Motion for Default Judgment (Doc. 135) is **DENIED**, and the Motions to Vacate Entries of Default Related to Defendants H&B Enterprises, Inc., and Bradley D. Bellville (Docs. 137 & 138) are **GRANTED.**

**SO ORDERED**, this  20th  day of February 2015.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**