## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

POST-CONFIRMATION                     :
COMMITTEE FOR SMALL LOANS,            :
INC., *et al.*,                       :
                                      :
      Plaintiff,       :
                                      :
v.                                    :     CASE NO.: 1:13-CV-195 (WLS)
                                      :
W. DEREK MARTIN, as Executor          :
of the Estate of Vance R. Martin, *et al.*, :
                                      :
      Defendants.      :
_____:

## ORDER

Present before the Court is Defendant Kimala B. Martin's Motion for Summary Judgment (Doc. 165) and James Patrick Johnston's Motion for Summary Judgment. (Doc. 173.) For the reasons stated herein, Defendants' Motions for Summary Judgment are **DENIED.**

## PROCEDURAL HISTORY

The Post-Confirmation Committee for Small Loans, Inc., *et al.* (hereinafter "the Committee") filed suit against the above-captioned Defendants on December 14, 2013. (Doc. 1.) Among the Defendants is Kimala B. Martin ("Kim Martin"), who answered the Complaint on August 29, 2014. (Doc. 39.) After this Court granted leave to amend (see Doc. 112), the Committee filed their Amended Complaint on November 7, 2014. (Doc. 113.) The Amended Complaint added James Patrick Johnston ("Patrick Johnston") as a defendant. Kim Martin thereafter answered the Amended Complaint on November 21, 2014. (Doc. 122.)

Instead of answering the Amended Complaint, Johnston filed a pre-answer Motion to Dismiss on November 26, 2014. (*See* Doc. 124.) Therein, Johnston argued both that the Committee failed to state a claim against him and the Court lacked personal jurisdiction over him. (*See id.*) On February 20, 2015, the Court denied Johnston's motion and found not

only did the Amended Complaint sufficiently state a claim against Johnston, but this Court could also exercise personal jurisdiction over him. (*See* Doc. 145.) Johnston thereafter filed an Answer to the Amended Complaint on March 14, 2015. (Doc. 149.)

On May 15, 2015, Kim Martin and Patrick Johnston filed separate motions for summary judgment. (*See* Docs. 165, 173.) Kim Martin seeks summary judgment as to Counts VI, VII, and XXII of the Amended Complaint, while Patrick Johnston seeks summary judgment as to Counts VI and XXII. (*See id.*) After receiving an extension of time to respond (see Doc. 187), the Committee timely responded to both motions on June 12, 2015. (Docs. 191, 192.) Kim Martin and Patrick Johnston timely replied thereto on June 26, 2015. (Docs. 202, 211.) As the movants for summary judgment, Kim Martin and Patrick Johnston have complied with M.D. Ga. L.R. 56 by attaching separate and concise statements of material fact to their motions (*see* Docs. 165-2, 173-3), and the Committee has complied as well by responding to both statements of material fact[1] (*See* Docs. 191-1, 192-1.) As such, the Court finds Kim Martin and Patrick Johnston's Motions for Summary Judgment (Doc. 165, 173) are ripe for review.

## FACTUAL HISTORY

### I. Introduction

The following facts are derived from the Complaint (Doc. 1), as amended (Doc. 113), Kim Martin's Amended Answer (Doc. 122) and Patrick Johnston's Answer (Doc. 149), their Statements of Undisputed Material Facts (Docs. 165-2, 173-3), and the Committee's Response to the Statement of Undisputed Material Facts (Docs. 191-1, 192-1), all of which were submitted in compliance with M.D. Ga. L.R. 56, and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits submitted, all of which are construed in a light most favorable to the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

---

[1] The Committee has also provided the Court with its own Statement of Undisputed Material Facts. (*See* Docs. 191-1, 192-1.)

## II. Relevant Facts

### A.  Kim Martin

Kim Martin is the wife of Defendant Jefferey V. Martin (hereinafter "Jeff Martin), and they have been married continuously since 1990.  (Doc. 165-2 at ¶ 1.)  Jeff Martin was a director of the Debtors[2] from February 2008 through April 2012, and was employed by The Money Tree, Inc. ("The Money Tree") as a loan approver from October 19, 1998 until September 28, 2012.  (Doc. 193-1 at ¶ 13.)  Kim Martin has never been employed by any of the Debtors.  (Doc. 165-2 at ¶ 2.)  She has never held any position at any time with The Money Tree, or any of its subsidiaries or affiliates (including Martin Family Group, LLLP, Interstate Motor Club, Inc., and Martin Sublease, LLC), as employee, director, officer, partner, shareholder or otherwise.  (*Id.* at ¶¶ 5-8.)  Instead, she has been a homemaker and active volunteer at schools in her community and her church.  (*Id.* at ¶ 4.)

It is undisputed that, from January 1, 2006 through December 31, 2012, Kim Martin never received any salary, compensation or transfers of any monies from her husband Jeff Martin, with the exception of approximately $1,500 to $1,900 per month, which she received from Jeff through their Joint Checking Account held at Park Avenue Bank, and later First National Bank of Decatur County, for the purpose of paying necessary household expenses, daily expenses for her and their son, and reasonable living expenses.  (Doc. 165-2 at ¶ 13.) Pursuant to this Court's June 30, 2014 Protective Order (Doc. 80), Kim Martin submitted 533 pages of bank account ledgers, canceled checks, and monthly statements from the joint checking account shared with Jeff Martin.  (*See* Docs. 177-180.)

Kim Martin avers that she was never aware that the Debtors were insolvent or allegedly insolvent at any point in time, or possessed any other information regarding the financial condition of the Debtors.  (Doc. 202-1 at ¶ 7.)  Aside from thinking that the Debtors were experiencing some issues after the closure of an office or laying off an

---

[2] As noted in this Court's previous orders, "Debtors" refers to Small Loans, Inc., The Money Tree, Inc., The Money Tree of Georgia, Inc., The Money Tree of Florida, Inc., and The Money Tree of Louisiana, Inc. Debtors filed for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Middle District of Alabama.  *See* Bankruptcy Case Nos. 11-12254, 11-12255, 11-12256, 11-2257 and 11-2258, United States Bankruptcy Court for the Middle District of Alabama, Southern Division. The bankruptcy cases were jointly administered and proceeded under *In re Small Loans, Inc., et. al.*, Chapter 11 Case No. 11-12254.

employee, Kim Martin did not speak further about the Debtors' financial condition with her husband. (Doc. 165-1 at 5.) She further avers that she did not have knowledge about the source of The Money Tree's funds to Jeff Martin's compensation, nor did she have knowledge regarding the source or amounts of any distribution paid to Jeff Martin from Martin Family Group, Interstate Motor Club, or from any other entities. (Doc. 202-1 at ¶¶ 8-9.) Kim Martin was only aware of the Vance R. Martin GST Exempt Family Trust f/b/o Jefferey V. Martin ("Jeff Martin Trust"), which she believed was funded by life insurance monies. (*Id.* at ¶ 10.) She avers that she never used any funds of Jeff Martin's Trust or believed that any of Jeff Martin's compensation was voidable, or ill-gotten, as alleged by the Committee. (*Id.* at ¶ 11.)

The following facts about the purchase and transfer of the Martin residence are disputed. On or about July 20, 2007, Kim and Jeff Martin purchased a home in Bainbridge, Georgia from Jeff's brother, Defendant W. Derek Martin, for $425,000. (Docs. 191-1 at ¶ 1; 191-2 at 1.) The residence was titled in both of their names as joint tenants with right of survivorship. (Doc. 191-1 at ¶ 2.) Kim Martin did not contribute any of her own funds to the purchase of their home. (*Id.* at ¶ 3.) She avers that the residence was purchased from the following sources: the sale of their prior residence (approximately $165,000), life insurance monies (approximately $100,000), and funds from the sale of Jeff Martin's interest in a vacation condominium previously owned by his father, Vance "Rudy" Martin (approximately $43,417), which approximately totals $308,417. (Doc. 202-1 at ¶ 4.) Currently, there is no mortgage on the Martin residence. Kim Martin further avers that none of the funds used to purchase the home came from any alleged fraudulent transfers or from any of Jeff Martin's compensation. (*Id.*)

On or about August 17, 2011, Jeff Martin received a memorandum informing The Money Tree's executives of the company's financial condition, their position outside of and within bankruptcy, and potential director and officer liability for directors of The Money Tree. (*Id.* at ¶ 4.) On or about August 18, 2011, this memorandum, along with the issue of director liability, was discussed over a conference call with The Money Tree's officers and outside counsel. (*Id.* at ¶¶ 5-6.) On or about September 28, 2011, Jeff Martin conveyed all of his interest in Martin residence to Kim Martin. (*Id.* at ¶ 7.) The 2011 deed reflects that

the Martin residence was exchanged as a gift.  (Doc. 191-4 at 1.)   Kim Martin also acknowledges that she did not give her husband anything in exchange for the home other than love and affection.  (Doc. 191-1 at ¶ 12.)  In addition to the conveyance of the Martin residence, Kim and Jeff Martin agreed to become each other's attorney in fact.  (*Id.* at 4-11.)

Kim Martin avers that the Martin residence was not transferred to her for any fraudulent purpose.  (Doc. 202-1 at ¶ 5.)  Instead, she states that the home was transferred to her name in connection with estate planning and preparation of a last will and testament for Jeff Martin by their attorney.  (*Id.*)  These preparations, Kim states, were due to Jeff's discovery of a medical condition thought to be cancer for which he sought treatment.  (*Id.*) The Martin's estate planning attorney, B. Thomas Conger, avers the same.  (Doc. 202-2 at 2.) According to Jeff Martin, the Martin home was transferred back into both Kim and Jeff Martin's name in June 2014 to show that he did not intend to hide anything from creditors. (Doc. 188-6 at 188-189.)

Under Counts VI and VII of the Amended Complaint, the Committee seeks to recover some or all of Jeff Martin's compensation from Kim Martin as the mediate or immediate transferee, pursuant to 11 U.S.C. § 550.  (Doc. 113 at ¶ 134, 139.)  Similarly, Count XXII seeks to generally recover all alleged voidable transfers from Kim Martin, among other Defendants, as the mediate or immediate transferee under 11 U.S.C. § 550.  (*Id.* at ¶¶ 220-222.)

**B.  Patrick Johnston**

Patrick Johnston is the husband of Defendant Grace Elizabeth Martin Johnston ("Grace Johnston"), and they presently live in Zanesville, Ohio.  (Doc. 173-3 at ¶ 1.)  Grace Johnston is the daughter of Rudy Martin, founder of The Money Tree.  (Doc. 193-1 ¶¶ 4, 17.)  The Money Tree and its subsidiaries were engaged in consumer finance business in the states of Georgia, Alabama, Florida, and Louisiana.  (*Id.* at ¶ 5.)  The Money Tree and its Georgia subsidiary raised money through selling debt instruments to the public.  (*Id.* at ¶ 2.) When asked whether he had ever considered an investment in The Money Tree, Patrick Johnston replied, "No.  It was a high-risk investment, as far as I know."  (Doc. 173-1 at 87.) He further stated that he received this information from his wife.  (*Id.*)

At or around the time of his death, Rudy Martin formed trusts for each of his three children, including Grace Johnston.  (Doc. 193-1 at ¶ 19.)  Grace Johnston presently serves as trustee of the Vance R. Martin GST Exempt Family Trust f/b/o Grace Elizabeth Martin Johnston ("Grace Johnston Trust").  (Doc. 193-1 at ¶¶ 20, 23.)  It is disputed as to whether Patrick Johnston received any money from Rudy Martin, his estate, or from the Grace Johnston Trust.  (Docs. 173-3 at ¶¶ 4-5; 192-1 at ¶¶ 4-5.)  However, it is undisputed that Patrick Johnston acknowledges the possibility that expenditures made by his wife relating to the residence that they share in Ohio may have been funded by the Grace Johnston Trust.  (Doc. 173-3 at ¶ 6.)  These expenditures included renovations or additions to their home's mudroom, laundry room, and exercise room.  (Doc. 173-3 at ¶ 7.)

The Committee seeks to recover from Patrick Johnston under Counts VI and XXII of the Amended Complaint.  (*See* Doc. 113.)  Count VI alleges that Patrick Johnston is the mediate or immediate transferee, pursuant to 11 U.S.C. § 550, of some or all of Rudy Martin's compensation from the Debtors.  (*Id.* at ¶ 132.)  Similarly to Kim Martin, the Committee also seeks to recover generally for alleged voidable transfers under Count XXII.  (*Id.* at ¶¶ 220-222.)

## STANDARDS OF REVIEW

### I.  Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment where no genuine issue of material fact remains and the party is entitled to judgment as a matter of law.  "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "It is 'genuine' if the record taken as a whole could lead a

rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Chapman*, 229 F.3d at 1023. The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to competent record evidence that would be admissible at trial. *See also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form."). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II. Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered

separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56.  As stated above, the Parties complied with the Federal Rules of Civil Procedure and the Local Rules by filing timely cross-motions for summary judgment, responses and replies thereto, and attached a separate and concise statement of material facts.  The Court will now address these ripe motions.

## ANALYSIS

Kim Martin and Patrick Johnston both present similar arguments in support of their motions for summary judgment.  They argue that any transfers made between spouses were made for the purpose of necessary and reasonable household and living expenses.  (*See* Docs. 165-1 at 4; 173-2 at 4.)  Because these transfers were taken for value, in good faith, and without knowledge of its voidability, they maintain that recovery of these secondary transfers are barred under 11 U.S.C § 550.  (*See id.* at 5; at 4.)  They both also attempt to shift the burden to the Committee by asserting that the Committee is unable to show that the funds were not otherwise used for these necessary household and living expenses.[3]  (*See id.* at 7; at 5.)

To the contrary, the Committee contends it has satisfied its burden of showing that both Kim Martin and Patrick Johnston were mediate or immediate transferees.  (*See* Docs. 191 at 5; 192 at 5.)  The Committee asserts that the burden is on Kim Martin and Patrick Johnston to prove their affirmative defenses under 11 U.S.C. § 550(b), which the Committee also maintains that both Kim Martin and Patrick Johnston failed to carry.  (*See id.* at 5-11; at 5-10.)

---

[3] The Court notes for the first time in their reply briefs (Docs. 202, 211), Kim Martin and Patrick Johnston argue that the Committee failed to initially establish that they even received transfers that are recoverable under 11 U.S.C. § 550.  (*Id.* at 2-3; at 2.)  It is well-settled in this Circuit that "[a]rguments raised for the first time in a reply brief are not properly before a reviewing court."  *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (quoting *U.S. v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994)).  Thus, the Court will decline to consider these arguments.

## I.  Recovery from Mediate or Immediate Transferees

Section 550 of the Bankruptcy Code[4] allows the trustee to recover avoidable transfers from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(2). Unlike an initial transferee, an immediate or mediate transferee may assert an affirmative defense to prevent the trustee from recovering. *See Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 895 (7th Cir. 1988). The trustee is exempt from recovering from a subsequent transferee that "takes for value . . . in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1). The burden of proving the affirmative defense rests squarely on the parties seeking to assert the defense. *See In re Nordic Vill., Inc.*, 915 F.2d 1049, 1055 (6th Cir. 1990), *rev'd on other grounds sub nom. United States v. Nordic Vill. Inc.*, 503 U.S. 30 (1992) ("The language of the statute clearly places the burden of showing value, good faith, and lack of knowledge, on the transferee as a defense."); *Dev. Specialists, Inc. v. Hamilton Bank. N.A. (In re Model Imperial, Inc.)*, 250 B.R. 776, 797 (Bankr. S.D. Fla. 2000) (accord). Accordingly, the Committee has no burden to satisfy, as claimed by Kim Martin and Patrick Johnston here; that burden rests with them.

Kim Martin and Patrick Johnston urge this Court to grant summary judgement in their favor, and against the Committee, because they believe their household and living expenses satisfy each element of the affirmative defense in § 550(b)(1). In order to fully address these Motions, the Court finds it appropriate to analyze each element of the purported affirmative defense.

### A.  Value

Value is not specifically defined under the Code. Section 550 does, however, include satisfaction or securing of a present or antecedent debt as examples. *See* 11 U.S.C. §

---

[4] Section 550 provides in part:

 (a)  Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

  (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
  (2) any immediate or mediate transferee of such initial transferee.

 (b)  The trustee may not recover under section (a)(2) of this section from—
  (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
  (2) any immediate or mediate good faith transferee of such transferee.

550(b)(1).  Otherwise, the term "value" has been left to the courts to determine on a case-by-case basis.  Some courts have generally understood "value" to mean "fair market value" or "reasonably equivalent value."  *See, e.g.*, *In re Laguna Beach Motors, Inc.*, 159 B.R. 562, 568 (Bankr. C.D. Cali. 1993) (reasonably equivalent value); *Brown v. Harris (In re Auxano, Inc.)*, 96 B.R. 957, 965 (Bankr. W.D. Mo. 1989) (fair market value).

Others courts have rejected the measure-of-equivalence standard in favor of considering whether any value was given to sufficiently support a simple contract.  *See, e.g.*, *Enron Corp v. Ave. Special Situations Fund II (In re Enron Corp.)*, 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005); *Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 590 n.15 (Bankr. N.D. Ill. 2005).  In this Circuit, at least one bankruptcy court has found that value requires "proof that the transferee gave up something rather than proof that the transferor or any prior transferor received something," which is more in line with the authority equating "value" to consideration in contracts.  *See Topgallant Grp., Inc. v. Peeples*, No. 89-41997, 1996 WL 33366594, at *19 (Bankr. S.D. Ga. Aug. 18, 1996) (citations and quotations omitted).  In the very least, "value" requires an exchange of something of worth.

Within the context of inter-spousal transfers, Kim Martin and Patrick Johnston cite a number of cases that stand for the proposition that payment of necessary and reasonable household expenses satisfy the value element of 11 U.S.C. § 550(b)(1).  *See, e.g.*, *United States v. Goforth*, 465 F.3d 730, 736 (6th Cir. 2006) (finding an exchange of "reasonably equivalent value" when transfers to a spouse or cohabitant are used for household expenses); *Barber v. Grube (In re Grube)*, No. 09-81713, 2011 WL 4704227, *5 (Bankr. C.D. Ill. Oct. 6. 2011)("An interspousal transfer of cash which is then used to pay reasonable and necessary household expenses is deemed to provide value to the transferor spouse even though the transferee spouse actually paid the expenses.").  The Committee, however, rejects this citation of authorities because none of them address 11 U.S.C. § 550 directly; rather Defendants' cited case law deals with other fraudulent transfer statutes' treatment of the term "value."  *See, e.g.*, *Goforth*, 465 F.3d at 736 (construing the Federal Debt Collection Procedures Act, which is similar to 11 U.S.C. § 548); *In re Grube*, 2011 WL 4704227, *5 (construing 11 U.S.C. § 548). The Committee further argues that courts do not generally hold that transfers used for household expenses equate to an exchange of value under fraudulent transfer law.  *See, e.g.*,

*Carneal v. Leighton*, 237 F. Supp. 2d 104, 110 (D. Me. 2002) (in construing Maine's Uniform Fraudulent Transfer Act, the court found no exchange of reasonably equivalent value when spouses have equal responsibility to pay household expenses and to support children).

While the Committee may be technically correct that the authorities cited by Kim Martin and Patrick Johnston do not specifically address the for value element under 11 U.S.C. § 550, those cases are illustrative of what it means for a mediate or immediate transferee to take for value. In *Goforth*, the court surveyed cases construing various fraudulent transfer statutes and found that the "greater weight of authority holds" that reasonably equivalent value is exchange when the transferee utilizes transfers for household expense. 465 F.3d at 736 (citing cases). With respect to Kim Martin, the Parties are not in dispute as to whether the $1,500 to $1,900 monthly allowance was used for the purpose of paying necessary household expenses, daily expenses for her and their son, and reasonable living expenses. Thus, the Court finds here that Kim Martin indeed took the subsequent transfers for value under 11 U.S.C. § 550(b)(1).

However, the Court cannot say the same for the transfer of the Martin residence. The record shows that Kim Martin did not contribute any funds to the purchase of the mortgage-free home. When the 2011 transfer occurred, the deed stated that transfer from Jeff Martin to Kim Martin was a gift. Additionally, it is undisputed that Kim Martin did not give her husband anything in exchange for the home, except for love and affection. This unequivocally shows that Kim Martin did not take the Martin residence for value because she did not give up anything in exchange. *See Matter of Treadwell*, 699 F.2d 1050, 1051 (11th Cir. 1983) (love and affection does not amount to adequate consideration). Kim Martin argues that the Committee has no viable recovery against Kim Martin for the transfer of the Martin residence because the home is no longer solely owned by Kim Martin; thus, she asserts, the Committee cannot recover against her under 11 U.S.C § 550. She argues that transfer of the Martin residence is neither material nor admissible to dispute her good-faith defense. Kim Martin further argues that it is undisputed that none of the funds used to purchase the Martin residence came to Jeff Martin from alleged fraudulent transfers or from Jeff Martin's compensation.

The Court rejects this argument because during times relevant to this litigation, the Martin residence was subsequently transferred from Jeff Martin to Kim Martin. Reversing the transfer years later to reflect the joint-ownership of the Martin residence does not make Jeff Martin's 2011 subsequent transfer to Kim Martin any less recoverable under 11 U.S.C § 550. Moreover, there is a question of fact as to whether Jeff Martin's compensation or other sources of funds were used to purchase the home. The deed reflects that the Martin residence was purchased for $425,000 with approximately $308,317 of Jeff Martin's funds from other sources. A reasonable juror could infer that the remaining $116,583 did not come from Kim Martin, as she did not contribute any funds to the purchase of the home. A reasonable juror could also infer that the remaining purchase amount came from Jeff Martin's compensation. Thus, the Court cannot agree that these facts are not material or admissible for this Court's full consideration of Kim Martin's good-faith defense under 11 U.S.C. § 550(b).

As for Patrick Johnston, while he may have benefitted from the renovations, the undisputed facts show that Grace Johnston made expenditures related to their home and not him. Furthermore, even if Patrick Johnston did use the subsequent transfers to renovate the Zanesville home, the Court does not find that elective renovations to the laundry room, mudroom, and exercise room are a necessary and reasonable household expense. *See, e.g.*, *In re Wettach*, 811 F.3d 99, 112 (3d Cir. 2016) (bankruptcy court's finding that Trustee could recover $167,297.65 in home renovation expenditures not clearly erroneous because the home was already habitable prior to improvements). Thus, viewing the evidence in a light most favorably to the Committee, a reasonable fact finder could find that Patrick Johnston neither took the subsequent transfers for value nor were the home renovations a necessary and reasonable household expense.

At this point, the Court finds that neither Kim Martin nor Patrick Johnston can conclusively satisfy their burden of establishing a good-faith defense. Accordingly, their motions for summary judgment should be denied. However, in order to render a full decision, the Court will assess the remaining two elements of the good-faith defense: good faith and without knowledge of voidability.

**B. Good Faith**

Similar to value, "good faith" is also not defined by the Code and is also evaluated with respect to the totality of the facts and circumstances of each case. *In re Consol. Capital Equites Corp.*, 175 B.R. 629, 637 (Bankr. N.D. Tex. 1994). Courts have assessed the good faith and without knowledge of voidability elements as a single element. *See, eg.*, *Bonded*, 838 F.2d at 897-98 ("[A] voidable transfer may lack good faith if he possessed enough knowledge of the events to induce a reasonable person to investigate."); *but see Official Comm. of Unsecured Creditors v. W. United Life Assurance Co. (In re Tri-Valley Distrib., Inc.)*, 452 B.R. 837, 851 (Bankr. D. Utah 2011). While there may be some overlap between the "good faith" and "without knowledge" elements, "[t]his court must endeavor to give meaning to each provision of § 550(b) without rendering a provision superfluous or insignificant." *In re Consol. Capital Equites Corp.*, 175 B.R. 629, 637 (Bankr. N.D. Tex. 1994); *see also In re Hackney*, No. 09-79795-JRS, 2014 WL 4059787, at *4 (Bankr. N.D. Ga Apr. 2, 2014) ("Section 550(b)(1) is phrased in the conjunctive, so [the transferee] must prove that it took . . . in good faith and without knowledge of voidability.") (emphasis in original).

In *In re Nieves*, the United States Court of Appeals for the Fourth Circuit recognized both a subjective and objective component in its good faith analysis. *In re Nieves*, 648 F.3d 232, 239 (4th Cir. 2011). The subjective component looks to "the honesty" and "state of mind" of the immediate or mediate transferee, and the objective component looks to whether the immediate or mediate transferee had knowledge of the voidability of the transfer, which is discussed below. *Id.* Focusing on the subjective component, this requires a look into the transferee's intent or intentions at the time they took a subsequent transfer. This is essentially a credibility determination. *See In re Whitacre Sunbelt, Inc.*, 200 B.R. 422, 427 (Bankr. N.D. Ga. 1996) (Much of the good faith defense depends upon the credibility of the parties, and credibility cannot be determined by summary judgment."). This element is more properly suited for a jury at trial. Thus, in finding that the subjective component of the good-faith element requires a credibility determination by a jury, the Court cannot grant summary judgment in Kim Martin and Patrick Johnston's favor. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate

13

inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

### C. Without Knowledge

Knowledge of voidability does not require "complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable; some lesser knowledge will do." *Bonded Fin. Servs.*, 838 F.2d at 898. However, a "lesser knowledge" is not the same as "constructive notice." *See Smith v. Mixon*, 788 F.2d 229, 232 (4th Cir. 1986); *see also In re Sherman*, 67 F.3d 1348, 1357 (8th Cir. 1995) (transferees need not be "a vigilant monitor for the creditors' benefit" when they have no information to suggest the existence of a fraudulent conveyance). Yet, "actual knowledge of facts that would lead a reasonable person to believe that the transferred property was voidable is all that is required to show knowledge." *In re Nieves*, 648 F.3d 232, 238 (4th Cir. 2011).

Even in viewing the evidence most favorably to the Committee, Kim Martin's belief that Debtors were having some "issues" after the closure of a location and laying off an employee is insufficient to show she had knowledge of the voidability of Jeff Martin's compensation or otherwise. Similarly, for Patrick Johnston, knowing that The Money Tree was a "risky" investment does not rise to the level of knowledge of the voidability of the transfer. Without more, the Court cannot discern from these fact whether Kim Martin or Patrick Johnston had lesser knowledge of the alleged voidability of the transfers. Moreover, the Committee has not established and the facts cannot support the creation of a genuine dispute "favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *See Chapman*, 229 F.3d at 1023.

However, as discussed above, the circumstances surrounding the transfer of the Martin residence months prior to the Debtors' filing of bankruptcy gives the Court some pause regarding whether Kim Martin had some knowledge regarding the voidability of transfer. While Kim Martin submitted material facts to show that the subsequent transfer was for estate-planning purposes, a reasonable juror could view the timing of the transfer, *i.e.* after Jeff Martin learned of potential director liability and before Debtors filed for bankruptcy, as evidence of facts that would lead a reasonable person to believe that the transferred property was voidable. As to Patrick Johnston, a reasonable juror is unlikely to

draw the same inference of knowledge of voidability on these facts.  However, as found above, Patrick Johnston is not entitled to summary judgment because a genuine issue of material fact remains as to whether he could satisfy the elements of whether he took an immediate or mediate transfer for value or in good faith.

<u>**CONCLUSION**</u>

For the above-stated reasons, Defendant Kimala B. Martin's Motion for Summary Judgment (Doc. 165) and James Patrick Johnston's Motion for Summary Judgment (Doc. 173) are **DENIED.**

**SO ORDERED**, this ___31st___ day of March, 2016.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**